UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EMMANUEL JACKSON BERNADIN, JR., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>MARRIOTT INTERNATIONAL, INC.; )<br>HOST INDIANAPOLIS I LP; HST )<br>LESSEE KEYSTONE LLC d/b/a )<br>SHERATON INDIANAPOLIS HOTEL;)<br>KEYSTONE HOTEL PROPCO LLC, )<br>)<br>Defendants. ) | Cause No. 1:17-CV-02753-TWP-TAB |

**AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

Emmanuel Jackson Bernadin, Jr. ("Mr. Bernadin"), for his Amended Complaint and Demand for Trial by Jury, states as follows:

### I.   INTRODUCTORY STATEMENT

1.   This is an action for damages brought by Mr. Bernadin, a disabled combat veteran who served in both Afghanistan and Iraq. Mr. Bernadin was denied access to a public portion of the Keystone Café and Lounge (the "Café") located at the Sheraton Indianapolis Hotel at Keystone Crossing (the "Hotel") on or about the morning of October 23, 2016. Because of his disability, Mr. Bernadin relied on a service dog named Bronze. Bronze was a fully certified service animal trained to do work and perform tasks for Mr. Bernadin's benefit, including detecting the onset of psychiatric episodes and lessening their effects. Employees of the Café and Hotel refused to allow Mr. Bernadin to sit at his chosen table at the Café's breakfast buffet, initially claiming that it was a health and safety violation

to allow Bronze so near both the food and the other guests. These employees instead insisted that Mr. Bernadin sit separately from the other guests. When Mr. Bernadin questioned the propriety of these actions, he was ultimately expelled from the Hotel. As a result of the foregoing action, Mr. Bernadin has suffered damages, including lack of access to a public eating space, unwarranted removal from the Hotel, loss of sleep, severe depression, the onset of extreme anxiety any time he has to enter a hotel or travel with Bronze (which is often), and increased stress.

2. In addition, throughout his stay at the Hotel, Mr. Bernadin—an African American—was treated less favorably than other Caucasian guests at the Hotel, who were not required to sign a waiver for a service dog or sit in a separate area of the Café from other guests during meals. As a result, Defendants also discriminated against Mr. Bernadin on the basis of his race.

## II. LEGAL BACKGROUND

**A. VENUE**

3. Mr. Bernadin is an adult resident of Fort Worth, Texas.

4. Defendant Marriott International, Inc. is a Delaware corporation that does business in Indiana, including via the operation of the Hotel and the Café.

5. Defendant Host Indianapolis I LP is a Delaware foreign limited partnership that does business in Indiana, including via its former ownership and operation of the Hotel and the Café.

6. Defendant HST Lessee Keystone LLC d/b/a Sheraton Indianapolis Hotel at Keystone Crossing is a Delaware corporation that conducts business in Indiana, including

via its former ownership and operation of the Hotel and Café.

7.     Defendant Keystone Hotel Propco LLC is a Delaware corporation that does business in Indiana, including via the current ownership and operation of the Hotel and the Café.

8.     Venue is proper in the Southern District of Indiana because a substantial part of the events giving rise to the claims occurred in this District.

**B.     JURISDICTION**

9.     This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 451, 1331, and 1343 as well as 42 U.S.C. §§ 1981 and 12182, *et seq.*, based on Defendants' discriminatory actions towards Mr. Bernadin.

10.    The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, is a federal statute that imposes enforceable standards addressing discrimination against individuals with disabilities in various institutions, services, and accommodations.

11.    Title III of the ADA prohibits discrimination based on disability in public accommodations. Private entities covered by Title III of the ADA include places of lodging (like the Hotel) and establishments serving food and drink (like the Café). 42 U.S.C. § 12182. Mr. Bernadin is entitled to relief under 42 U.S.C. § 12188(a).

12.    Mr. Bernadin qualifies as an individual with a disability because he suffers from a mental impairment in the form of combat-induced post-traumatic stress disorder that substantially limits one or more major life activities. 42 U.S.C. § 12102.

13.    Bronze qualified as a service dog under the ADA. The Technical Assistance Manual issued to assist with compliance of Title III of the ADA defines a service animal as

"any animal individually trained to do work or perform tasks for the benefit of an individual with a disability. 1 ADA Title III Technical Assistance Manual III-4.2300. Bronze qualified as a service animal under this statute. Bronze was individually trained and certified to assist Mr. Bernadin in coping with his disability and functioning in his daily activities by performing specific tasks.

14. Dr. Haynes's § 1981 claim is authorized and instituted pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1981, as amended, and 28 U.S.C. § 1343(4); and entitled to relief for his Section 1981 action under 42 U.S.C. § 1988.

15. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Mr. Bernadin's Indiana state law claim.

C.  **PLAINTIFF**

16. Emmanuel Jackson Bernadin, Jr. is a citizen of the United States, and was, during all times relevant to this Complaint, a resident of Fort Worth in Denton County, Texas.

D.  **DEFENDANTS**[1]

17. Defendant Marriott International, Inc. is a Delaware corporation that does business in Indiana, including via the operation of the Hotel and the Café.

18. Defendant Host Indianapolis I LP is a Delaware foreign limited partnership that does business in Indiana, including via its former ownership and operation of the Hotel and the Café.

---

[1] Because Mr. Bernadin lacks full knowledge and information on the ownership, operation, and alleged purchases of the Hotel, each potential owner has been included as a party to this Complaint.

4

19. Defendant HST Lessee Keystone LLC d/b/a Sheraton Indianapolis Hotel at Keystone Crossing is a Delaware corporation that conducts business in Indiana, including via its former ownership and operation of the Hotel and Café.

20. Defendant Keystone Hotel Propco LLC is a Delaware corporation that does business in Indiana, including via the current ownership and operation of the Hotel and the Café.

### III. FACTUAL BACKGROUND

#### A. MR. BERNADIN'S DISABILITIES WERE CAUSED BY HIS MILITARY SERVICE IN THE NAVY.

21. Mr. Bernadin is a combat veteran who served as both a Naval Technician in Afghanistan and in a Naval detainee camp in Iraq.

22. Mr. Bernadin survived a massive suicide bombing in Afghanistan that killed fourteen of his brothers-in-arms. As a result, Mr. Bernadin suffers from extreme post-traumatic stress disability and depends on Bronze—his service animal—to help mitigate his disability.

#### B. MR. BERNADIN'S SERVICE DOG ASSISTED HIM ON A DAILY BASIS IN COPING WITH HIS DISABILITIES.

23. Bronze was a fully certified service animal trained to do work and perform tasks for Mr. Bernadin's benefit, including detecting the onset of psychiatric episodes and lessening their effects. Bronze did this by creating a barrier between Mr. Bernadin and unwanted individuals. Bronze was additionally tasked with creating a block from behind Mr. Bernadin, thereby covering his "six" and not allowing anyone to approach Mr. Bernadin from behind. Mr. Bernadin additionally suffers from sciatic and lower lumbar issues, and

Bronze aided him with mobility tasks and other day to day activities.

24. Mr. Bernadin relied upon Bronze to both cope with his disability and to function in his day to day life. Bronze accompanied Mr. Bernadin at all times, and was trained to function in any location Mr. Bernadin is likely to find himself, including restaurants, stores, hotels, etc.

**C.  IN OCTOBER 2016, MR. BERNADIN AND BRONZE WERE BROUGHT TO INDIANAPOLIS AS PART OF A NATIONALLY RENOWNED FILM FESTIVAL.**

25. Mr. Bernadin and Bronze are featured in a documentary entitled *When War Comes Home* that focuses on the struggles and challenges soldiers with post-traumatic stress disability face when they return home.

26. *When War Comes Home* won the endorsement of Peter W. Chiarelli, a retired United States Army general, who served as the 32nd Vice Chief of Staff of the U.S. Army and is a leading authority on post-traumatic stress disability.

27. It was this film that brought Mr. Bernadin to Indianapolis in October of 2016. *When War Comes Home* premiered at the Heartland Film Festival (the "Festival"), and the Festival arranged for Mr. Bernadin's accommodations at the Hotel so that he might attend the premiere and promote awareness regarding combat veterans' struggles with post-traumatic stress disability.

**D.  THE HOTEL REQUIRED MR. BERNADIN, AN AFRICAN AMERICAN, TO SIGN A WAIVER, UNLIKE MR. BERNADIN'S CAUCASIAN COLLEAGUE IN THE FILM.**

28. When Mr. Bernadin attempted to check into the Hotel with Bronze, however, he was prevented from doing so.

29. The Hotel would not allow Mr. Bernadin to check into the Hotel until he

6

signed a waiver, which based on knowledge and belief, is required of guests with pets.

30. Upon information and belief, Mr. Bernadin's costar in the film *When War Comes Home*, Spencer Milo—a Caucasian male—checked into the Hotel with his service dog without signing any waiver.

31. Mr. Milo reported that he experienced no trouble bringing his service dog into the Café.

32. Mr. Milo's stay at the Hotel fully overlapped with Mr. Bernadin's stay at the Hotel.

### E. MR. BERNADIN WAS DENIED ACCESS TO THE CAFÉ, LEADING TO MR. BERNADIN'S EXPULSION FROM THE CAFÉ AND THE HOTEL.

33. On the morning of October 23, 2016, Mr. Bernadin and Bronze—clad in his service animal vest—entered the Café for the breakfast buffet.

34. After Mr. Bernadin prepared his plate at the buffet, he was met by a Hotel employee who refused to allow him to sit at his chosen table. Instead, she insisted that he sit separately from the other guests.

35. When Mr. Bernadin questioned this action (and even displayed an ADA card setting forth his rights), management claimed that it was a health and safety violation to have Bronze so near both the food and the other guests.

36. When Mr. Bernadin correctly pointed out the inaccuracy of this statement, management conferred with the Hotel employee and a new narrative emerged: now, a complaint had supposedly been lodged about Bronze being too near the buffet.

37. Bronze, however, was allowed to accompany Mr. Bernadin on his trip to the breakfast buffet. The Technical Assistance Manual specifically provides that restaurants must

permit a service dog to accompany its owner in "all areas of the restaurant open to other patrons." *See* 1 ADA Title III Technical Assistance Manual III-4.2300. This would include the breakfast buffet.

38. Before the conversation with the manager, Mr. Bernadin activated live streaming via Facebook and began broadcasting the incident on his Facebook feed. The video is archived with a date stamp of October 23, 2016, on Mr. Bernadin's Facebook page and remains publicly viewable here:

https://www.facebook.com/emmanuel.bernadin/videos/10211979859751072/?fref=mentions.

39. As the situation escalated, security arrived. Mr. Bernadin and Bronze were asked to leave the premises. Mr. Bernadin ultimately complied with this request despite:

    (i) the gross violation of his rights;

    (ii) the complete lack of sensitivity to his disability and his service to this country; and

    (iii) the fact that he was left alone in an unfamiliar city with no transportation or any idea where he might be able to find replacement lodging.

40. Almost a week later, on October 28, 2016, Jennifer Bauchner—the general manager of the Hotel—sent Mr. Bernadin an email of apology and assured him that she recommunicated to her entire team the importance of service animals. A copy of this email is attached hereto as Exhibit A. Defendants, however, has refused to offer any type of nationwide training to remedy its violations.

8

41. Upon information and belief, before the incident with Mr. Bernadin, the employees at the Hotel were not properly trained on Title III of the Americans with Disabilities Act, especially as it related to the accommodation of service dogs.

### F. MR. BERNADIN SUFFERED SIGNIFICANT ANGUISH BECAUSE OF DEFENDANTS' ACTIONS.

42. As a result of the actions Defendants committed at the Hotel and Café, Mr. Bernadin became emotionally distraught, angry, insulted, and depressed.

43. Mr. Bernadin has experienced persistent depression and stress due to the manner in which he was treated, has suffered extreme loss of sleep, and now experiences severe anxiety any time he enters a hotel with or without a service dog.

44. This anxiety has made Mr. Bernadin's travel to discuss the documentary and the struggles facing veterans even more difficult.

45. When traveling, Mr. Bernadin has, on multiple occasions, stayed in his car overnight—rather than the comfort of a hotel—because of this incident.

46. Mr. Bernadin's full-time job is as a software engineer for a nationally recognized company.

47. Mr. Bernadin also frequently makes presentations on veterans' issues and represents the veteran community.

48. Mr. Bernadin is a sought-after public speaker, who has been invited to provide presentations for STEM Radio and TedxHerndon. Mr. Bernadin furthermore serves as the Vice President of Education for LM Toastmasters.

49. As a result, Mr. Bernadin frequently travels—at least ten (10) times per year.

50. Mr. Bernadin has traveled to the Midwest and expects to continue to travel to

the Midwest for these public speaking engagements, including the Indianapolis area.

51. In addition, Mr. Bernadin continues to travel to promote *When War Comes Home*. The film is currently being promoted anywhere military personnel are located, as the film promotes awareness regarding combat veterans' struggles with post-traumatic stress disability.

52. Mr. Bernadin's costar in *When War Comes Home* resides in Indiana. The film is thus still being actively promoted in Indiana and in the Indianapolis area.

53. Mr. Bernadin specifically expects to return to Indianapolis as part of the promotion of *When War Comes Home*.

## IV.   LEGAL CLAIMS

### COUNT I
(*Discrimination under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 et seq.*)

54. Mr. Bernadin incorporates the allegations of paragraphs 1 through 53 above and, in addition, states that Defendants' acts and omissions in this matter discriminated against him because of his disability in violation of the ADA.

55. Mr. Bernadin is disabled within the meaning of the ADA, as he has been diagnosed Post Traumatic Stress Disability and used a service dog.

56. Defendants operate a place of public accommodation, including the Hotel and the Café.

57. Defendants violated Title III of the ADA, 42 U.S.C. § 12182, by refusing to provide Mr. Bernadin equal access to its facilities at the Café on or about October 23, 2016, removing him from the Hotel entirely when he questioned the propriety of this refusal, and discriminating against him on the basis of his disability.

## COUNT II
*(Intentional Deprivation of Rights Secured to Plaintiff by Section 1981 of the Civil Rights Act of 1871)*

58. Mr. Bernadin incorporates the allegations of paragraphs 1 through 57 above and, in addition, states that Defendants discriminated against him on the basis of his race, African American, under 42 U.S.C. § 1981.

59. Mr. Bernadin is African American.

60. By expelling Mr. Bernadin from the Café and the Hotel as well as requiring documentation not required for Caucasians with a service animal, Defendants treated Mr. Bernadin, as an African American, differently than other patrons who were not African American.

61. Defendants therefore intentionally discriminated against Mr. Bernadin by treating Mr. Bernadin differently than other Café and Hotel patrons on the basis of Mr. Bernadin's race, African American.

62. Defendants' discrimination related to Mr. Bernadin's right to make and enforce a contract for a hotel room as well as to enjoy the benefits, privileges, terms, and conditions of the contractual relationship by providing more favorable treatment to Caucasian guests, refusing to provide Mr. Bernadin equal access to its facilities at the Café, removing him from the Hotel entirely when he questioned the propriety of this refusal, and discriminating against him on the basis of his race.

## COUNT III
*(Negligent Training)*

63. Mr. Bernadin incorporates the allegations of paragraphs 1 through 62 above and, in addition, states that Defendants failed to properly train and supervise its employees,

who caused damage to Mr. Bernadin.

64. Upon information and belief, the employees of Defendants were not properly trained on requirements of Title III of the Americans Disabilities Act ("ADA").

65. Defendants knew or had reason to know of this training deficiency.

66. Defendants knew they had the ability to control their employees.

67. Defendants thus had a duty to properly train their employees on the ADA.

68. Defendants breached this duty, and its employees were not properly trained on the ADA.

69. Mr. Bernadin suffered damages as a proximate result of Defendants' failure to properly train its employees, when he was improperly expelled from the Café and the Hotel based on a flawed understanding of the ADA and was left without transportation or other lodging.

## V. PRAYER FOR RELIEF

WHEREFORE, Mr. Bernadin respectfully requests that this Court:

(a) Award Mr. Bernadin nominal damages for the violations set forth above.

(b) Award Mr. Bernadin compensatory damages for harm and injuries suffered as a result of the violations set forth above pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1988.

(c) Order Defendants to pay Mr. Bernadin punitive damages for its malicious and/or reckless conduct described above, in amounts to be determined at trial pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1988.

(d) Award Mr. Bernadin his costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12133.

(e) Enjoin Defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from discriminating against Mr. Bernadin, or any other person, because of their race, disability, or need for a service animal to mitigate their disability.

(f) Order Defendants to institute and carry out policies, practices, and programs to train all of its employees with respect to the ADA and the rights of those with disabilities and requiring the aid of service animals.

(g) Order Defendants to institute and carry out policies, practices, and programs which provide equal protection for individuals of diverse racial backgrounds, and which eradicate the effects of its past and present unlawful practices.

(h) Grant such further relief as the Court deems just, necessary, and proper in the public interest.

## VI.   RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff reserves the right to assert additional violations of federal and state law.

## VII.   DEMAND FOR JURY TRIAL

Emmanuel Jackson Bernadin, Jr. respectfully requests a trial by jury on all issues so triable.

Respectfully submitted,

*s/ Sandra L. Blevins*
Kevin W. Betz, Atty. No. 14188-82
Sandra L. Blevins, Atty. No. 19646-49
Courtney E. Endwright, Atty. No. 30557-49

*Attorneys for Plaintiff Emmanuel Jackson Bernadin, Jr.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 3, 2017, a copy of the foregoing was served by electronic filing. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<em>s/ Sandra L. Blevins</em><br>Sandra L. Blevins

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Office: (317) 687-2222
Fax: (317) 687-2221
E-mail: litigation@betzadvocates.com