# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| EMMANUEL JACKSON BERNADIN, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:17-cv-02753-TWP-TAB |
| | ) |
| MARRIOTT INTERNATIONAL INC., | ) |
| HOST INDIANAPOLIS I LP, | ) |
| HST LESSEE KEYSTONE, LLC, and | ) |
| KEYSTONE HOTEL PROPCO LLC, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY

This matter is before the Court on Partial Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Filing No. 51), filed by Defendants Marriott International Inc.'s, Host Indianapolis I LP's, HST Lessee Keystone LLC's, and Keystone Hotel Propco LLC's (collectively, "Defendants"). Also pending before the Court is Plaintiff Emmanuel Jackson Bernadin, Jr.'s ("Bernadin") Motion for Leave to File Surreply in Opposition to Defendants' Partial Motion to Dismiss (Filing No. 63). Bernadin filed this lawsuit, asserting claims for disability and race discrimination as well as a claim for negligent training. The Defendants seek partial dismissal, asserting the Court does not have subject matter jurisdiction over the disability discrimination claim because Bernadin lacks standing, and there are no viable claims against Defendant Keystone Hotel Propco LLC. After the Motion was fully briefed, Bernadin requested leave to file a surreply in opposition to the Defendants' Motion. For the following reasons, the Bernadin's Motion for Leave to File Surreply is **granted** and the Court has considered the surreply in its analysis. The Defendants' Partial Motion to Dismiss is also **granted**.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Bernadin as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Bernadin is a combat veteran from Fort Worth, Texas, and we are grateful for his service to our country. He served in a Naval detainee camp in Iraq and as a Naval technician in Afghanistan. Bernadin survived a massive suicide bombing in Afghanistan that killed fourteen of his brothers-in-arms. As a result of this experience, Bernadin suffers from extreme post-traumatic stress disability ("PTSD") and depends on Bronze—his service animal—to help mitigate his disability. Bernadin qualifies as an individual with a disability because he suffers from PTSD that substantially limits one or more major life activities. ([Filing No. 31 at 2](Filing No. 31 at 2)–5.)

Bronze was individually trained and certified to assist Bernadin in coping with his disability and functioning in his daily activities. Bronze performs specific tasks to help detect the onset of psychiatric episodes and minimize their effects. He does this by creating a barrier between Bernadin and unwanted individuals. Bronze creates a block from behind Bernadin, thereby covering his back and not allowing anyone to approach Bernadin from behind. He also helps Bernadin with mobility tasks and other day-to-day activities. Bernadin relies on Bronze both to cope with his disability and to function in his day-to-day life and he accompanies Bernadin at all times. Bronze was trained to function in any location that Bernadin visits, including restaurants, stores, and hotels. *Id.* at 3–6.

Defendant Marriott International Inc. is a Delaware corporation in the hotel industry and does business in Indiana. Defendant Host Indianapolis I LP is a Delaware limited partnership that

formerly owned and operated the hotel and Keystone Café and Lounge (the "Café") that are at the center of this lawsuit. Defendant HST Lessee Keystone LLC, doing business as Sheraton Indianapolis Hotel at Keystone Crossing ("Sheraton Hotel"), is a Delaware corporation that formerly owned and operated the hotel and Cafe. Defendant Keystone Hotel Propco LLC ("Keystone Hotel") is a Delaware corporation, and it currently owns and operates the hotel and the "Café". *Id.* at 4–5.

On October 23, 2016, the Sheraton Hotel was operated by Sheraton License Operating Company, LLC, a wholly owned subsidiary of Starwood Hotels and Resorts Worldwide, LLC, which in turn was a wholly owned subsidiary of Defendant Marriott International, Inc. On September 6, 2017, the Sheraton Hotel was sold and is no longer operated or managed by Sheraton License Operating Company, LLC or any other entity owned by Defendant Marriott International, Inc. ([Filing No. 52-2 at 1](#).)

In October 2016, Bernadin and Bronze were visiting Indianapolis, Indiana for the premiere of a documentary film at the Heartland Film Festival (the "Festival"). Bernadin and Bronze are featured in the documentary film about soldiers with PTSD and their challenges when they come home from war. The Festival arranged for Bernadin and Bronze to have accommodations at the Sheraton Hotel while they were in Indianapolis ([Filing No. 31 at 6](#)).

When Bernadin (who is African American) attempted to check into the Sheraton Hotel with Bronze, he was prevented from doing so until he signed a waiver, which was required of guests with pets, not service animals. Bernadin's co-star in the film, Spencer Milo ("Milo") (who is Caucasian), checked into the Sheraton Hotel with his service dog without signing a waiver. Milo's stay at the Sheraton Hotel fully overlapped Bernadin's stay at the Sheraton Hotel. Milo experienced no trouble bringing his service dog into the cafe at the Sheraton Hotel. *Id.* at 6–7.

On the morning of October 23, 2016, Bernadin and Bronze (wearing his service animal vest) entered the Café, located in the Sheraton Hotel, for the breakfast buffet. After going through the buffet line and preparing a plate of food, he was confronted by a hotel employee who refused to allow him to sit at his chosen table. She insisted that Bernadin sit away from the other guests. When he questioned the employee's actions and displayed an ADA card, Sheraton Hotel management asserted that it was a health and safety violation to have Bronze so close to the food and other guests. When Bernadin pointed out the inaccuracy of this assertion, Sheraton Hotel management conferred with the employee, and then they explained that a complaint was made about Bronze being too close to the buffet. Bronze had been permitted to accompany Bernadin on his trip to the breakfast buffet to collect his food, and ADA regulations specifically allow service dogs to accompany their owners in all areas of the restaurant open to other patrons, which would include the breakfast buffet. *Id.* at 7–8.

As the situation escalated, security arrived to intervene. Bernadin and Bronze were asked to leave the premises, and Bernadin ultimately complied with the request. Less than a week after this incident, on October 28, 2016, Jennifer Bauchner (the general manager of the Sheraton Hotel) sent an apology email to Bernadin. She assured Bernadin that she recommunicated to her entire team the importance of service animals. Further, she explained that Bernadin could be assured that he could be comfortable staying at the Sheraton Hotel if he returned to Indianapolis. *Id.* at 8; [Filing No. 31-1](#).

Bernadin is employed full-time as a software engineer for a nationally recognized company. He frequently gives presentations on veterans' issues and represents the veteran community. He is a sought-after public speaker, who has been invited to provide presentations for STEM Radio and TedxHerndon. Bernadin also serves as the vice president of education for LM

Toastmasters. Because of these roles and activities, he travels at least ten times a year. Bernadin has previously traveled to the Midwest and expects to continue to travel to the Midwest, including the Indianapolis area, for these public speaking engagements (Filing No. 31 at 9–10).

Bernadin also continues to travel to promote his film. The film which raises awareness regarding combat veterans' struggles with PTSD, is promoted wherever military personnel are located. Bernadin's co-star in the film lives in Indiana, and thus, the film is actively being promoted in Indiana and in the Indianapolis area. Bernadin expects to return to Indianapolis to promote the film. *Id.* at 10.

Additionally, Bernadin has four military family members who live in the Indianapolis area, and he has visited these military family members twice in the past five years. He plans to visit them in the Indianapolis area at least two times in the next two years. Bernadin explains that he would stay at the Hotel for these visits if the Hotel corrected its violations of the Americans with Disabilities Act (Filing No. 79 at 1–2).

On August 11, 2017, Bernadin filed a Complaint against Marriott International Inc., asserting a claim for disability discrimination under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, ("ADA") (Filing No. 1). On November 20, 2017, he filed his Amended Complaint, adding three new defendants: Host Indianapolis I LP, HST Lessee Keystone LLC, and Keystone Hotel Propco LLC, and two new claims: race discrimination under 42 U.S.C. § 1981 and negligent training under Indiana state law (Filing No. 31). The Defendants then filed a partial motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.  LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction.

*United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Furthermore, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual

allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. DISCUSSION

Count I of the Amended Complaint alleges discrimination under Title III of the ADA; Count II alleges intentional deprivation of rights secured to Plaintiff by Section 1981 of the Civil Rights Act of 1871 (discrimination based on race); and Count III alleges negligent training. Defendants seek dismissal of Count I of the Amended Complaint for lack of subject matter jurisdiction and for all counts against Keystone Hotel for failure to state a claim upon which relief could be granted. After the Defendants' Partial Motion to Dismiss was fully briefed, Bernadin filed a Motion for Leave to File Surreply in Opposition to Defendants' Partial Motion to Dismiss, asking the Court for permission to respond to two new arguments raised in the Defendants' Reply Brief. The Court will first address the Motion for Leave to File Surreply and then turn to the Partial Motion to Dismiss.

**A.     Motion for Leave to File Surreply**

In his Motion for Leave to File Surreply, Bernadin contends the Defendants raised two new arguments in their Reply Brief. He first asserts that Defendants asked the Court to strike his sworn declaration that was filed with his Response Brief in opposition to the Partial Motion to Dismiss. Bernadin argues the Defendants' request to strike his declaration warrants a surreply. Next, he argues that a surreply is warranted to address the Defendants' position that their sworn affidavit can be considered by the Court without converting the Partial Motion to Dismiss into a summary judgment motion and without permitting Bernadin to undertake discovery on the affidavit. The Defendants did not respond to Bernadin's Motion for Leave to File Surreply.

The "purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 2010 U.S. Dist. LEXIS 29463, at *4 (S.D. Ind. Mar. 25, 2010). However, "new arguments and evidence may not be raised for the first time in a reply brief. Reply briefs are for replying, not raising new arguments or arguments that could have been advanced in the opening brief." *Reis v. Robbins*, 2015 U.S. Dist. LEXIS 23207, at *5 (S.D. Ind. Feb. 26, 2015) (citations omitted). "[T]his serves to prevent the nonmoving party from being sandbagged." *Id.* (citation omitted). Courts allow a surreply only in limited circumstances to address new arguments or evidence raised in the reply brief or objections to the admissibility of the evidence cited in the response. *See, e.g., id.*; *Miller v. Polaris Labs., LLC*, 2014 U.S. Dist. LEXIS 18161, at *4–5 (S.D. Ind. Feb. 12, 2014).

Noting that there is no objection by the Defendants', Bernadin's Motion for Leave to File Surreply is **granted**. The proposed surreply—addressing the Defendants' request to strike

evidence cited in the response and discussing the reply argument—tendered at Filing No. 63-1 is deemed filed on the Court's docket.

Turning to the arguments raised in Bernadin's Surreply Brief, he asserts that the Court cannot consider the Defendants' affidavit when deciding the Partial Motion to Dismiss because the Defendants raise a "facial attack" on the Amended Complaint, and courts cannot look at evidence outside the pleadings when considering a facial attack. Bernadin also asserts that the Court need not strike his sworn declaration, and the Court can consider his declaration because a "plaintiff need not put all of the essential facts in the complaint; he may add them by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint." *Help at Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) (internal citation and quotation marks omitted).

In their Reply Brief, the Defendants raise a facial attack as to the injury-in-fact element of Bernadin's standing, but they raise a factual challenge to the redressability element of Bernadin's standing, and they offered the affidavit to support the factual challenge to redressability. Thus, Defendants' assert the Court may properly consider the affidavit without converting the Rule 12(b) motion into a summary judgment motion with additional discovery and presentation of evidence.

The Seventh Circuit explained the distinction between facial and factual challenges to a complaint in *Apex Digital v. Sears, Roebuck & Co.*—a case on which Bernadin relies heavily. "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (emphasis in original). "In contrast, a factual challenge lies where the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction." *Id.* at 444 (internal citation and quotation marks omitted) (emphasis in

original). A factual challenge occurs when a defendant "claims that although [the plaintiff's] complaint was facially sufficient, external facts called the court's jurisdiction into question." *Id.* "The law is clear that when considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (internal citation and quotation marks omitted).

Each party's argument urging the Court to consider their sworn statement when deciding the Partial Motion to Dismiss is well taken. Based on the Seventh Circuit case law in *Help at Home* and *Apex Digital*, the Court declines to strike or disregard the parties' sworn statements. Rather, the Court will consider the affidavit and declaration where appropriate to help determine the propriety of dismissing the claims.

**B.** **Partial Motion to Dismiss**

Defendants argue the Court does not have subject matter jurisdiction over Bernadin's ADA discrimination claim because Bernadin lacks standing. Additionally, the Defendants argue that there are no viable claims alleged against Keystone Hotel in any of the counts.

**1.** **Standing to Assert an ADA Claim**

A plaintiff must have standing to bring and maintain a lawsuit, and there are three requirements for a plaintiff to establish standing: "(1) injury in fact, which must be concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redress-ability." *Scherr*, 703 F.3d at 1074 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "Whether or not a plaintiff has standing to bring a lawsuit is a jurisdictional requirement which may be challenged through a motion made pursuant to Rule 12(b)(1)." *Thomas v. Ind. Oxygen Co.*, 32 F. Supp. 3d 983, 985 (S.D. Ind. 2014). The Defendants

argue that Bernadin cannot establish injury in fact or redressability for the ADA claim, and thus, he lacks standing to bring the claim.

Concerning the ADA claim, the Defendants note that Bernadin is not entitled to any monetary damages because only injunctive relief is available under Title III of the ADA. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013). Thus, only Bernadin's claim for injunctive relief is relevant for purposes of standing to bring the ADA claim.

Bernadin asks the Court to enjoin the Defendants from discriminating against him or any other individual because of their race or disability or need for a service animal to mitigate their disability; to order the Defendants to institute and carry out policies, practices, and programs to train all of its employees with respect to the ADA and the rights of those with disabilities and requiring the aid of service animals; and to order the Defendants to institute and carry out policies, practices, and programs which provide equal protection for individuals of diverse racial backgrounds, and which eradicate the effects of its past and present unlawful practices (see Filing No. 31 at 13). Therefore, the Defendants point out, Bernadin is seeking prospective injunctive relief.

"[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights." *Scherr*, 703 F.3d at 1074. Furthermore, "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Id.* (quoting *Lujan*, 504 U.S. at 564).

> [P]laintiffs' professions of an "intent to return to the places they had visited before—where they will presumably, this time, suffer the same injury they suffered before—is simply not enough. Such 'some day' intentions—without any description of concrete plans, or indeed even any specifications of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."

11

*Id.* (quoting *Lujan*, 504 U.S. at 564) (emphasis in original).

The Seventh Circuit further explained that "a plaintiff's 'conditional statements'—that they would visit a place but for ongoing violations—cannot 'be equated with the speculative 'some day intentions'' that were insufficient to show injury in fact in *Lujan*." *Id.* Thus, to show an injury in fact sufficient to support standing,

> a plaintiff must allege "past injury under the ADA"; show that "it is reasonable to infer from her complaint that this discriminatory treatment will continue"; and show that "it is also reasonable to infer, based on the past frequency of her visits and the proximity of the public accommodation to her home, that she intends to return to the public accommodation in the future."

*Id.* (quoting *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008)).

The Defendants argue that Bernadin's allegations fail to support any actual or imminent future harm at the Hotel. They argue the Amended Complaint shows Bernadin lives hundreds of miles away, he was only in town for a film festival, and he raised only one instance of past alleged disability discrimination. They assert that the vague allegations of frequent business travels to the Midwest fall short of supporting standing. Defendants note that Bernadin does not allege why he would return to the Sheraton Hotel at issue rather than one of the hundreds of other hotels in the Indianapolis area. They also note that there are no allegations of specific dates or events for which Bernadin intends to return to the Sheraton Hotel. The Defendants similarly argue that Bernadin's vague assertions regarding family members in the Indianapolis area fail to show an actual, concrete, or imminent future injury caused by the Sheraton Hotel. Without an actual or imminent plan to return to Indianapolis, let alone the Sheraton Hotel, Bernadin fails to meet his burden to establish an injury in fact to support standing.

The Defendants also argue that, even if Bernadin had alleged a concrete plan to return to the Sheraton Hotel, he would also have to allege a likelihood the Defendants would violate the

ADA in the future, and he has failed to do so. They argue that Bernadin's reference to a "continuing violation" misstates this case because the case does not involve an architectural defect that violates the ADA and that remains in place. Instead, it involves a single interaction between Bernadin and hotel employees—a single past human interaction that does not continue today or into the future.

Bernadin asserted one alleged past violation of the ADA and attached to his Amended Complaint an email that he received from the general manager of the Hotel shortly after the incident. The email informed Bernadin that the general manager had recommunicated to her entire team the importance of service animals and that, if he returned to Indianapolis, he could be assured that he could be comfortable staying at the Hotel (Filing No. 31 at 8; Filing No. 31-1). The Defendants assert that "this email affirmatively establishes that there is no likelihood of future harm with regard to discrimination against Plaintiff on the basis of his service animal should he ever have concrete plans to return to the subject hotel." (Filing No. 52 at 9.) They argue, "Because Plaintiff fails to establish that discrimination against him in the future is either likely or imminent, he lacks standing to bring a claim under Title III of the ADA." *Id.*

Bernadin responds that the management staff and the policies and procedures of the Sheraton Hotel have not changed since the incident and the change in ownership of the Sheraton Hotel. The general manager of the hotel remains the same. The Sheraton Hotel has retained the same name, the Cafe has retained the same name, and it has the same website, email domain, and social media addresses. Bernadin asserts that, because the website and email domain are still the same, it is likely that Defendant Marriott International Inc. still participates in the operation of the hotel and cafe. He also argues that Keystone Hotel may have assumed the liabilities of the other Defendants when it purchased the Hotel.

Bernadin contends that he has sufficiently alleged a past violation of the ADA by alleging the denial of equal access at the Cafe, his removal from the Hotel, and the discrimination based on disability. He asserts that the Hotel has for the most part remained unchanged since the incident and since the sale of the Hotel, including using the same name and having the same management, and it has refused Bernadin's requests to provide ADA training to hotel personnel. Thus, Bernadin argues, it is reasonable to infer that ADA violations will continue in the future. He asserts that he has concrete plans to visit Indianapolis in the future for speaking engagements, to promote his film, and to visit family, and he would prefer to stay at the Sheraton Hotel if it would correct its ADA violation. Bernadin argues that, in light of these allegations, he has shown an injury in fact to support standing to bring his ADA claim.

The Court first notes that this case does not involve a structural or physical shortcoming that violates the ADA and remains in place at the Sheraton Hotel. Rather, it involves a single incident of human interaction between hotel staff and Bernadin. In conclusory fashion, Bernadin asserts that the ADA violation has not been remedied and is ongoing because the Defendants have refused to comply with his litigation demands of providing training and changing policies. Yet the email that he attached to his Amended Complaint shows that the offending hotel staff and the incident were promptly addressed by the Sheraton Hotel general manager. This email, which Bernadin attached to his Amended Complaint, undermines his conclusory statement that the ADA violation is ongoing.

The Court also finds it significant that Bernadin alleges that his co-star in the film, Milo, checked into the Hotel with his service dog without signing a waiver, Milo experienced no trouble bringing his service dog into the Cafe at the Hotel, and Milo's stay at the Hotel fully overlapped Bernadin's stay at the Hotel. These allegations undermine any inference that there was a consistent

or widespread problem of ADA violations when Bernadin stayed at the Hotel and that there is an ongoing threat of future ADA violations. These allegations undermine any concrete and particularized, actual and imminent threat of future violations of the ADA.

The Amended Complaint alleges, "Bernadin has traveled to the Midwest and expects to continue to travel to the Midwest for these public speaking engagements, including the Indianapolis area." (Filing No. 31 at 9–10.) Furthermore, "Bernadin specifically expects to return to Indianapolis as part of the promotion" of his film. *Id.* at 10. Bernadin's allegations concerning past travels to the "Midwest" do not indicate that he stayed at the Hotel in the past. Nor do his anticipated travels to the "Midwest" support his assertion that he may stay at the Hotel in the future as the Hotel is in Indianapolis, not the Midwest. There are no allegations that Bernadin even traveled to Indianapolis for work or speaking engagements prior to the incident giving rise to this litigation.

To bolster his ADA claim, Bernadin asserts new facts that he has four military family members who live in the Indianapolis area, and he has visited them twice in the past five years with plans to visit them again at least two times in the next two years (Filing No. 79 at 1). His new allegations do not state that he stayed at the Sheraton Hotel either of the two times that he visited family in the past five years. His allegations also do not explain where in the "Indianapolis area" these family members live or when or for what purpose he plans to visit them two times in the next two years. These allegations do not allow a reasonable inference, based on the past frequency of Bernadin's visits and the proximity of the Hotel to family members' homes, that he intends to return to the Hotel in the future. While Bernadin asserts that he "would return to the Hotel and the Café if it corrected its violations of the Americans with Disabilities Act," (Filing

No. 79 at 2), this conclusory statement is not supported by factual allegations that provide a concrete and particularized, actual and imminent injury.

Additionally, "the Festival arranged for Mr. Bernadin's accommodations at the Hotel so that he might attend the premiere." (Filing No. 31 at 6.) This allegation from Bernadin's Amended Complaint reveals that he did not select the Sheraton Hotel. If he had selected the hotel, it may have been reasonable to infer that Bernadin sought out and chose the Sheraton Hotel in the past and would continue to do so in the future as his preferred hotel in the Indianapolis area. However, that is not his allegation; the Festival arranged his accommodations at the Sheraton Hotel for him.

The facts and reasonable inferences drawn therefrom do not support an actual and imminent, concrete and particularized injury to establish the first requirement of standing to bring an ADA claim against the Defendants. Bernadin lacks an injury in fact to support his claim for prospective injunctive relief under Title III of the ADA.

The Court further notes that Bernadin also faces significant barriers to establishing the standing requirement considering the change in ownership and operation of the Sheraton Hotel since the incident and that change's effect on redressability, as well as Keystone Hotel's lack of existence at the time of the incident thereby undermining any possible "causal connection between the injury and the defendant's conduct." *Scherr*, 703 F.3d at 1074. For all these reasons, Bernadin's disability discrimination claim must be dismissed under Rule 12(b)(1), because the court lacks subject matter jurisdiction.

1. **Claims Brought Against Keystone Hotel**

In addition to the disability discrimination claim, Bernadin asserts claims for race discrimination and negligent training against Keystone Hotel and the other Defendants. The Amended Complaint contains only two identical allegations regarding Keystone Hotel:

"Defendant Keystone Hotel Propco LLC is a Delaware corporation that does business in Indiana, including via the current ownership and operation of the Hotel and the Café." (Filing No. 31 at 3, 5.) This jurisdictional allegation is in contrast to the allegations regarding the other Defendants' "former ownership and operation of the Hotel and the Café." *Id.* at 2–5. Bernadin acknowledges that, "[b]ecause Mr. Bernadin lacks full knowledge and information on the ownership, operation, and alleged purchases of the Hotel, each potential owner has been included as a party to this Complaint." *Id.* at 4.

Under Rule 12(b)(6), the Defendants seek the dismissal of the race discrimination and negligent training claims against Keystone Hotel. They assert that Bernadin is "attempting to hold an entity that was not even in existence at the time of the alleged incident responsible for the claimed violations, solely because Plaintiff presumably believes this entity would be in a position to provide the requested prospective injunctive relief." (Filing No. 52 at 10.)

The Defendants argue that the allegations fail to meet the minimum standard of plausibility because there can be no judgment for relief without liability. Bernadin specifically pleads that Keystone Hotel is the current owner of the Hotel, but he alleges no facts as to what role Keystone Hotel played at the time of the incident, nor could he since Keystone Hotel did not exist until six months after the incident when it was formed on April 24, 2017. The Defendants point the Court's attention to an Indiana Secretary of State certificate of authority (Filing No. 52-3)[1] to support the assertion that Keystone Hotel was formed on April 24, 2017, and thus, did not exist at the time of the incident.

---

[1] "As a general rule, we may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6)." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015). The Indiana Secretary of State certificate of authority filed in connection with the Partial Motion to Dismiss is a public record, of which the Court can take judicial notice and consider when deciding the Motion under Rule 12(b)(6).

The Defendants argue the Amended Complaint contains no allegations that Keystone Hotel assumed any liability on behalf of the prior owners, and on the face of the Amended Complaint, Bernadin can prove no set of facts to show liability against Keystone Hotel. Thus, they argue, Keystone Hotel is entitled to dismissal with prejudice for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6).

Bernadin responds that the ADA violation is ongoing and continuous, even into the current ownership and operation of the hotel by Keystone Hotel. However, Bernadin fails to respond regarding the claims for race discrimination and negligent training. He asserts that the Hotel management, policies and procedures, and name and internet presence have stayed the same following the Hotel's change in ownership. Because these things have not changed, Bernadin asserts that it is reasonable to infer that violations are on-going under Keystone Hotel's ownership and operation. He also argues that the allegations in the Amended Complaint do not support the Defendants' assertion that Keystone Hotel did not assume any liabilities of the other Defendants when it purchased the Hotel. He concludes that, because the allegations support his request for injunctive relief under the ADA against Keystone Hotel, the Court should deny the Partial Motion to Dismiss in its entirety.

There are no allegations asserted against Keystone Hotel in the Amended Complaint, other than the two identical jurisdictional allegations that Keystone Hotel is the current owner/operator of the Hotel. The allegations contain no facts of any wrongdoing by Keystone Hotel and no facts that Keystone Hotel assumed any liabilities of the former owners/operators when it purchased the Hotel. The public record before the Court indicates that Keystone Hotel was not in existence at the time of the alleged incident. Bernadin's argument concerning an on-going ADA violation (which claim was addressed in the previous section of this Order) cannot save deficiently pled

claims for race discrimination and negligent training, about which Bernadin failed to respond. The Amended Complaint fails to allege any plausible claim or right to relief against Keystone Hotel. Therefore, the Court concludes that the claims asserted against Keystone Hotel must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Partial Motion to Dismiss (Filing No. 51) is **GRANTED**. The ADA claim is dismissed with prejudice as to all Defendants because the Court lacks subject matter jurisdiction under Rule 12(b)(1). ("A dismissal for lack of jurisdiction precludes relitigation of the issue actually decided, namely the jurisdictional issue.") *Perry v. Sheahan,* 222 F.3d 309, 318 (7th Cir. 2000). The race discrimination and negligent training claims are dismissed without prejudice as to Keystone Hotel. "[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). As there may be some set of facts, beyond mere speculation on the part of Bernadin, that could support his claims against Keystone Hotel, Bernadin may seek leave to amend his pleadings within 14 days of the date of this Entry, if he determines that facts do support those dismissed claims.

Additionally, Bernadin's Motion for Leave to File Surreply in Opposition to Defendants' Partial Motion to Dismiss (Filing No. 63) is **GRANTED**.

**SO ORDERED.**

Date: 3/4/2019

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Courtney E. Endwright
BETZ & BLEVINS
cendwright@betzadvocates.com

Kevin W. Betz
BETZ & BLEVINS
kbetz@betzadvocates.com

Sandra L. Blevins
BETZ & ASSOCIATES
sblevins@betzadvocates.com

Nicholas Gene Brunette
REMINGER CO. LPA (Indianapolis)
nbrunette@reminger.com

Lyndsay I. Ignasiak
REMINGER CO. LPA (Indianapolis)
lignasiak@reminger.com